(599 P.2d 323)

No. 50,223

O. D. TURNER, Secretary of Transportation of the State of Kansas, *Appellee*, v. L. A. GILBREATH, *et al.*, *Appellant*.
Petition for review denied November 8, 1979.

Opinion filed September 7, 1979.

*Ron Bodinson* and *L. Franklin Taylor* of Payne & Jones, Chartered, of Olathe, for the appellant Margaret Sally Keach.

*William O. Isenhour, Jr.*, of Soden, Eisenbrandt, Isenhour & Gates, of Mission, for the appellee The Mission State Bank and Trust Company.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SPENCER, J.: This is an appeal from a judgment directing apportionment of a highway condemnation award.

Defendant Margaret Sally Keach, together with other defendants not concerned on this appeal, were owners of undivided interests in the real estate taken. The Mission State Bank and Trust Company claims an interest in the real estate by virtue of a mortgage dated November 3, 1971, which purportedly was executed by Keach and acknowledged before Inez Ludwig, a notary public. Keach denies that she executed that mortgage and claims that the certificate of acknowledgment attached is false insofar as she is concerned. Her name does not appear on the note representing the debt for which the mortgage was security, and admittedly she did not sign that instrument.

At trial, testimony was presented which indicated that Inez Ludwig had on previous occasions notarized documents when members of the firm by which she was employed represented to her that they had seen the parties concerned sign the instrument. She was a secretary for the law firm of which Keach's trial attorney Frank W. Hursh was a member, and of which Keach's deceased husband had been a member. Inez Ludwig had been subpoenaed as a witness but her death occurred some three weeks before trial and the substance of her testimony had not been preserved.

The issue of apportionment was resolved in favor of the Bank. Keach's motion for new trial was overruled and she has appealed. In support of her motion for new trial and on this appeal, it is argued that Keach's trial attorney had a conflict of interest which denied her a fair trial. We make special note of the fact that nothing in this record purports to challenge the honesty or sincerity of the trial attorney, but rather it is contended that the circumstances may have adversely affected the attorney's judgment in presenting the case for Keach.

The trial of this cause commenced May 27, 1977, and one witness testified that morning. Following the noon recess, and before any other witness had been called, Frank W. Hursh, attorney for Keach, addressed the court:

"Well, Your Honor, if I may at this time, it's a little out of order, but I feel that I would like to just make a brief statement for the record. There is apparently a lot of inter-relationships between the parties here, and I would like to state, and I think everybody probably already knows it, so that there won't be any question, I would like the record to show that Mr. Howard and I officed together as attorneys at one time. I, of course, am an attorney for Mrs. Keach, and he is an attorney in this matter. At different times, Mr. Howard represented Mr. Keach, and I may have, or I may not have during this period of time.

"Also, our firm, during this same period of time, and I know one or two cases where they did represent the Mission State Bank. Inez Ludwig, although she is deceased, a portion of the matter to be determined here was a secretary in the firm for some ten years, while at times different law partners operated there in that particular office. She was secretary for Keach, Howard and Jones; Keach, Howard, Woodworth and Hursh; and Keach, Howard and Hursh. Subsequently, just so the record is clear, Inez Ludwig died on the 5th day of May of this year. I was named as Executor in her will and attorney for her estate, so there is a lot of inter-relationships in the matters thereto. So that there won't be any question about that, I think it should be reflected in the record.

"THE COURT: Inez is not involved in here, is she?

"MR. HURSH: Only so far as she was the Notary on those documents that are subject to questioning in this hearing. She is not a party directly."

The trial proceeded without further delay.

In ruling on the motion for new trial, the trial court found that Hursh's representation of Keach, despite his relationship with Inez Ludwig and his obligation as executor of her will and attorney for her estate, "must be viewed as a multiple representation of adverse interest[s];" but that in this case no severe or blatant conflict of interest developed because Keach had not lodged a claim against Inez Ludwig or her estate until Hursh had withdrawn as her counsel. The court reasoned that Hursh was never in a position of having to represent or of having once represented both parties in direct litigation. The court adopted the Bank's label of the situation as a "potential conflict of interest." It was noted that the Supreme Court has not sanctioned participation by attorneys in situations where a conflict is likely to develop [*Wilson v. Wahl,* 182 Kan. 532, 539, 322 P.2d 804 (1958)], but nevertheless has condoned such where there has been consent of the client after full disclosure [*In re Estate of Seeger,* 208 Kan. 151, 490 P.2d 407 (1971)]. The court then stated that during the trial Keach knew that her attorney represented the estate of Inez Ludwig, was aware of the employer-employee relationship between Hursh and Ludwig, and that Hursh was her free choice of counsel. The trial court also reasoned that the argument that Keach did not fully realize the implication of the dual representation was incredible in light of the fact that she was the widow of a lawyer. We pause here to note that her husband's death occurred some sixteen years prior to this trial and there is nothing in the record to indicate that Keach was trained in the law or that she had more than the ordinary acquaintance with the Code of Professional Responsibility by which the activities of lawyers must be governed. It was concluded that Keach had sufficient information from which to make a valid consent, which was exercised by her failure to object to Hursh's continued representation of her cause, noting that silence may be deemed consent.

In *Seeger,* it was held:

"An attorney owes to his client fidelity, diligence and skill and an attorney cannot undertake the representation of conflicting interests or the discharge of inconsistent duties which may cause a breach of the trust due his client, however,

with the consent of the client after a full disclosure, an attorney is not so restricted under the facts and circumstances related in the opinion." 208 Kan. 151, Syl. ¶ 3.

"Consent may arise from action, inaction or silence from which arises an inference that consent has been given, or it may exist where a person by his line of conduct has shown a disposition to permit another person to do a certain thing without raising an objection thereto." 208 Kan. 151, Syl. ¶ 4.

We are also mindful of the dissent in *Seeger* where in speaking of the legal profession, it was said:

"There is no profession in which so many temptations beset the path of him who is to serve with strict integrity and loyalty. There are pitfalls at every step to be avoided if the integrity and good name of the bar and of the administration of the law are upheld." 208 Kan. at 160.

"Consent by implication should not be recognized in cases of this kind. The integrity and good name of the bar and of the courts cannot be thus maintained in the eyes of the public. Full disclosure as required in the disciplinary rule is not made when a client and his cause is abandoned in open court during the hearing, and without advance notice . . . .

"Full disclosure should require that the alternatives available be explored with the client. In this case adjournment of the hearing should have been requested. The clients should have been advised of their right to hire another attorney to prosecute their case if they so desired . . . . The clients should in no case be forced into a consent, implied or otherwise, without an explanation of the exact nature of the conflicting interests . . . ." 208 Kan. at 161-162.

The record in this case reveals there was nothing done by court or counsel by way of explanation to Keach of alternatives which may have been available to her. There was no continuance requested by counsel or directed by the court. Keach does not appear to have been advised of a potential claim against the Inez Ludwig Estate nor of her right to employ other counsel in this cause.

In *State v. Leigh,* 178 Kan. 549, 552, 289 P.2d 774 (1955), it is stated:

"[A]ttorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been retained and received the confidence of a client, he cannot enter the services of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as, in effect, to be a part thereof. The rule is a rigid one, and it is well that it is so. It is designed not only to prevent the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from placing himself in a position where he may be required to choose between two conflicting duties."

Our Code of Professional Responsibility defines "differing interests" as including "every interest that will adversely affect

either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." 224 Kan. cix.

In *Wilson v. Wahl,* 182 Kan. 532, it was held that an attorney, finding himself in a position of conflict of interest, should voluntarily have withdrawn when objection to his participation was made and "having failed to do so, it became the duty of the trial court to forbid his further participation therein." See also *Scott, Administrator v. Farrow, Executor,* 192 Kan. 666, 391 P.2d 47 (1964); *Alexander v. Russo,* 1 Kan. App. 2d 546, 571 P.2d 350, *rev. denied* 222 Kan. 749 (1977).

True, Keach remained silent following disclosure by her attorney and did not lodge an objection to his further participation. Such is hardly surprising for, at that stage of the proceedings and without some inquiry as to her understanding of the situation and as to whether she wished to object, there was very little that she might have done. We find no merit in the reasoning that as the widow of an attorney Keach should have realized the implication of the dual representation. We hold that without a showing of full disclosure to Keach of the possible consequences of her attorney's continued representation in this cause, her consent to the continued representation by that attorney was not properly to be inferred.

The testimony of Inez Ludwig was not preserved, as well it might have been in the exercise of diligence in the preparation of this cause, nor was there testimony from an expert witness which, as noted by the trial court, would certainly have aided in reaching a decision. Contemporaneously with the filing of the motion for new trial, Keach filed her affidavit in which she stated that early in 1977 she had been advised that the testimony of Inez Ludwig had been secured; and that she did not have a clear understanding of the statement made to the court by her attorney nor the opportunity to evaluate her need for representation free from conflicting interests. There was also filed at that time the affidavit of one Charles C. Scott, admittedly one with expertise as a document examiner. His findings would indicate a miscarriage of justice if the present judgment of the trial court is allowed to stand.

Rules pertaining to the granting of a new trial because of newly discovered evidence are reviewed in *Wilcox v. Colwell,* 193 Kan. 617, 396 P.2d 315 (1964). One such rule is that the evidence could

not with reasonable diligence have been discovered and produced at the trial. Clearly, the testimony of a document examiner could and perhaps should have been produced at the trial and the fact that it was not so produced brings into focus the apparent conflict of interest. Another such rule is that the evidence must not be cumulative. The test of whether evidence is cumulative is not whether it tends to establish the same fact, but whether it is different in kind. New evidence of a higher type or character will not be classified as cumulative. 66 C.J.S., New Trial § 113, p. 323. The opinion evidence proposed apparently contradicts the evidence of the Bank and differs in kind and character from the direct evidence given by Keach at trial. See *Woods-Ringstaff Lumber Co. v. Pond,* 191 Kan. 465, 382 P.2d 282 (1963). The third rule is that the evidence must be such as to indicate a reasonable probability of a different decision. While recognizing our holding in *McMurray v. Crawford,* 3 Kan. App. 2d 329, 594 P.2d 1109 (1979), wherein it was noted that a notary's certificate of acknowledgment gives rise to the presumption of execution of the instrument, which presumption may be overcome only by clear and convincing evidence, we must conclude that if the findings of the document examiner are determined by the court to be correct, there would be a reasonable probability of a different decision. In light of the facts as revealed by this record, we hold that Keach has affirmatively shown her entitlement to a new trial and it was an abuse of discretion to deny the motion.

In view of what has been said, we do not now decide the issue as to the apportionment of the appraisers' award between landowner and lienholder.

Reversed and remanded with directions to grant defendant Margaret Sally Keach a new trial.