■ In the Matter of KIM WALKER et al. JOHN BRYANT et al.; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK; SPENCE-CHAPIN SERVICES TO FAMILIES AND CHILDREN. — February 17, 1982 was the return date set for all papers on the original motions. The Simpson firm attempted to submit to this court an affidavit of Jane Edwards, dated February 20, 1982, and a memorandum of William J. Manning on February 22 and February 26, 1982. On each date, this court rejected the Edwards affidavit and the Manning memorandum as untimely. Upon the present motion, the Edwards affidavit, the Manning memorandum and all other papers submitted by the parties will be considered. This court will also correct a factual misstatement in its original decision accompanying the order entered February 26, 1982. Specially, the court will note that the Reardon affidavit, dated February 17, 1982, stated that on February 1, 1982 "Mr. Nowak also communicated the terms of the altered order to Spence-Chapin". The present motion is granted so that this court may consider all the papers filed. Upon reconsideration, the court finds no reason for changing the order entered February 26, 1982. However, the original decision upon the prior motions, is hereby recalled and the following decision is rendered in lieu thereof: Two motions are pending before this court. Stanley Bass, the attorney for the former foster parents, moved on February 2, 1982 for an order (a) explicitly reinstating the stay of the adoption proceeding in Oregon and (b) directing Spence-Chapin to rescind any action it might have taken in furtherance of the proposed adoption of the three children pending the disposition of this appeal. Bass also moved on February 10, 1982 for an order directing Spence-Chapin to rescind its consent to the adoption and for related relief. Affidavits have been submitted by the attorneys for all the parties. Moreover, the Justices of this court have conferred with their staff to reconstruct the course of events between January 27, 1982 and February 11, 1982. Suffice it to say that there are many factual disputes that will not be resolved at this time. On occasion, we may point to some of the factual discrepancies for background purposes. However, those matters in dispute will not serve as a basis for this decision. In deciding these motions, the papers will be viewed

most favorably to Spence-Chapin and its attorney, Simpson, Thacher & Bartlett. In responding to these motions, Roy L. Reardon, a partner in Simpson, has submitted an 18-page affidavit dated February 17, 1982. Two associates in that firm, Edward J. Nowak and John N. O'Shea, and the managing attorney, John V. Monckton, have read Reardon's affidavit and have affirmed its correctness. This same affidavit was also adopted by certain administrators at Spence-Chapin. Special cognizance will also be taken of the individual affidavits submitted by (i) Edward Nowak, (ii) William J. Manning of the Simpson firm, (iii) Jane D. Edwards, Spence's executive director, (iv) Joanne R. Hiscox, Spence's assistant executive director, and (v) Reardon upon reconsideration. In a prior motion returnable January 18, 1982, the Commissioner of Social Services had moved for (a) leave to appeal from two orders of the Family Court, dated March 7, 1981 and December 3, 1981, and (b) a stay of a section 392 of the Social Services Law hearing scheduled for January 28, 1982. Spence-Chapin, through the Simpson firm, cross-moved for identical relief including "such other and further relief as the court may deem just and proper." It should be emphasized that John N. O'Shea, for the Simpson firm, made the following comments at the conclusion of his moving affidavit: "4. It is respectfully requested that in order that meaningful relief may be afforded herein, the Section 392 hearing currently scheduled to commence on January 28, 1982 be stayed pending determination of this appeal and that an expedited appeal be granted. In addition, it is asked that this cross-motion be heard on an expedited basis". Each of the orders appealed from contained decretal paragraphs that, in effect, stayed the commissioner and Spence-Chapin from proceeding with the adoption in Oregon. As a result of the stay in each order, Spence-Chapin had not been able to give its consent to the Oregon adoption for an extended period of time. Upon the original motion and cross motion returnable January 18, 1982, neither the commissioner nor Spence-Chapin requested specifically that this court stay the "stay" of the adoption proceedings. Any request by those parties in that regard would have been frivolous because a completed adoption in Oregon would have mooted this appeal. On January 27, 1982, an employee of the court received an internal memorandum granting leave to appeal and staying the section 392 hearing., Accordingly, the parties were notified by telephone on January 27, 1982 that leave to appeal had been granted and that the section 392 hearing, scheduled for January 28, 1982, had been stayed. None of the attorneys, except Edward J. Nowak, contest this fact. In an affidavit, dated March 1, 1982, Nowak recalls his memory of that occurrence: "3. The caller stated my name, then identified himself by name and as a clerk of this Court. I said, 'Yes, sir.' He then said, 'Matter of Walker [or perhaps "Walker and Pitman"] — motions for leave to appeal — granted.' I again said, 'Yes, sir.' He next said, 'Motions for stay — granted.' I again said, 'Yes, sir.' He then said the appeals were to be perfected for the April term and that an order was being filed. I thanked him for calling and we hung up. The entire conversation took no more than twenty to thirty seconds". In drafting the written orders on the afternoon of January 27, 1982, the clerk correctly transcribed the order granting leave to appeal. This four-Justice order is not in dispute upon these motions and warrants no further discussion. The clerk correctly drafted the decretal paragraph of the single-Justice order for a stay. However, the recital paragraph incorrectly described the motion and cross motion as having been made to stay both orders appealed from. The recital paragraph was patently incorrect. On January 28, 1982, the attorneys for the parties met in Family Court. At that time, copies of the single-Justice order granting the stay were distributed. Concededly, that order was drawn in overly broad language that seemed to stay both orders appealed from instead of simply staying the section 392 hearing. In Family Court, the Judge and the

attorneys appeared to recognize that the single-Justice stay apparently permitted the adoption to go forward if the recital paragraph was read literally. After an extended colloquy, the Family Court Judge suggested that a clarification be sought in this court of the original order of January 27, 1982. Allan G. Krams, the attorney for the commissioner, agreed on the record that he would not consent to the adoption proceedings until the original order was clarified. Nowak and O'Shea departed without expressing their intentions upon the record. During the late morning or the early afternoon of January 28, 1982, Stanley Bass, attorney for the foster parents, contacted a clerk of this court to correct the ministerial error in the original order of January 27, 1982. As the Simpson firm notes in its papers, it was improper for Bass to make this ex parte communication. However, this application by Bass was not unexpected since the Simpson firm had been advised in Family Court that all parties wished a clarification. On January 28, 1982, a clerk of the court corrected the original order so as to make it clear that only the section 392 hearing was being stayed. This action was understandable because the clerk was conforming the recital paragraph to (i) the court's internal memorandum limiting the stay to the section 392 proceeding and (ii) the commissioner's and Spence-Chapin's specific requests for that same relief. The argument by the Simpson firm that this court stayed both orders appealed from as part of the "further relief" requested in its cross notice of motion is totally nonsensical in the context of this case. Except for this one argument, the Simpson firm even now does not show that there is any meritorious basis for asserting that the original order was correct. Unfortunately, the Reardon affidavit of February 17, 1982 provides the court with little information with regard to the events occurring on the afternoon of January 28, 1982. According to the Reardon affidavit, the following occurred after the hearing in the Family Court on January 28, 1982: "13. After the close of the hearing, Mr. Nowak and Mr. O'Shea left the courtroom. They returned to this firm's offices and met with me on that same day, January 28, 1982. We reviewed the proceedings and the order of January 27, 1982 (Exhibit B), and then communicated with our client, Spence-Chapin. This office received no communication or message from anyone regarding this matter during the balance of that day, January 28, 1982. We have confirmed with our client that it received no communication from any other party about the matter at any time on January 28, 1982. 14. At about the close of business on that day, January 28, 1982, our client sent to PLAN, the receiving agency in Oregon, records concerning the three children together with consents to the adoption by the McMurricks. (Copies of those consents and of the covering letter are annexed hereto as Exhibit D.) Later that same evening, Mr. Nowak telephoned the McMurricks' lawyer, Greg Allen Hunt, who had previously been informed of the stay orders of the Family Court, read to him the Court's January 27 order (Exhibit B), and told him that Spence-Chapin had sent materials including its consents to PLAN. A copy of the January 27 order (Exhibit B) was mailed to Mr. Hunt on the next day". Jane Edwards, in her affidavit of March 4, 1982, also provides a minimum of information as to the events of January 28, 1982. She states: "4. A second question concerned our action on January 28. I wish once again to make it clear that while I listened to the reports of our attorneys as to the terms of this Court's order of January 27, 1982 and as to the proceedings before Judge Marks in the Family Court on January 28, and took the advice received from our attorneys into account, and also consulted with others here at Spence-Chapin, it was my decision based upon my judgment to forward the consents to adoption to PLAN at the close of business on January 28, 1982, when it appears that none of the parties had made any application to have the order clarified or modified so as to reinstate

the stays of the Family Court against our consenting to the adoptions. It seemed reasonable to me that the Court had meant what it literally said in the January 27 order and wished no longer to prevent the long overdue adoptions, which were clearly in my opinion in the best interests of the children and which had long ago been approved by the Commissioner of Social Services. I did not intend to disobey any order of the Court in forwarding these consents, and I believed, after much consideration, that our duty to the children required this action on my part". Both the Simpson firm and Spence maintain that they acted in good faith on January 28, 1982. However, neither sets forth the substance of their conversations on that date. The Simpson firm states that it "communicated" with its client; Spence alleges that it received "advice" from its attorneys. The Manning affidavit of March 1, 1982 gives the following explanation for the muteness of Simpson and Spence: "Mr. Reardon's affidavit is silent as to any other communications between Spence-Chapin and this firm during that period since they are irrelevant as well as not within Mr. Reardon's competence to disclose". When Spence-Chapin mailed the consents to "PLAN" on January 28, 1982, it did not notify any of the other parties to this proceeding. In this bitterly contested case, Spence-Chapin and the Simpson firm had a co-ordinate duty to apprise their adversaries of the dramatic change in the status of the case effected by the transmittal of the consents to Oregon. This they clearly failed to do. The papers show that, on January 29, 1982, the Simpson firm physically received a corrected order limiting the stay to the section 392 hearing. In a telephone conversation on January 29, 1982, deputy clerk Galdi informed managing attorney, Monckton, that there was indeed a corrected order. Admittedly, Monckton conveyed this information to Nowak and O'Shea. The Simpson firm did not act upon the corrected order over that weekend. According to Reardon's affidavit of March 4, 1982, his firm "needed time to consider the appropriate steps to be taken, including possibly attempting to rectify the alteration in the order". On January 29, 1982, Spence could have telephoned to PLAN to revoke its consents even before the consents arrived through the mail in Oregon. As will be developed below, this act did not occur because the Simpson firm only informed Spence of the corrected order on February 1, 1982. In a letter, dated February 1, 1982, Nowak, of the Simpson firm, expressed his reservations to deputy clerk Galdi concerning the change in the original order. In concluding his letter, Nowak states: "We believe that the Court was misled in this regard and that there was no basis for the manner of request that apparently was made to the Court's employee. Indeed, no notice was given to us, either before or after such request, that substantive changes were to be or had been made to the order. Our client has acted on the order as originally filed and intends to proceed on such order in such form, as it was the only one that was signed by a justice of the Court". In addition to the telephone communication with deputy clerk Galdi, Roy Reardon spoke with deputy clerk Berger on February 1, 1982. Mr. Berger was informed that Spence-Chapin had acted on the original order. However, Berger was not told by Reardon that the consents had already been mailed on January 28, 1982. Nowak, on the evening of February 1, 1982, read the corrected order over the telephone to Hunt, the attorney for the adoptive parents. There is no indication in these papers as to whether Hunt ever informed the Oregon court that the consents should not have been forwarded or that a corrected order was issued by this court. It is unlikely that Hunt ever apprised the Oregon court of that fact. On February 1, 1982, Nowak "also communicated the terms of the altered order to Spence-Chapin". Jane Edwards, in her affidavit of March 4, 1982, gives her version of why she failed to withdraw her consents on February 1, 1982: "6. The question, I understand, has also been raised as to why Spence-Chapin did not take some action to revoke its consents when it learned on

February 1, 1982 that the wording of the January 27, 1982 order was the result of an error by the clerk of the Court. First of all, I saw no reason to revoke our consents since we had long ago determined, as had the Commissioner, that the granting of our consents was in the best interests of the children. I believed it would not be proper for Spence-Chapin voluntarily to attempt to revoke those consents for the best interests of the children would not be served by such action on our part. Moreover, I knew that the Court and counsel for all parties had been informed on several occasions that Spence-Chapin had taken its action on January 28 long before we learned of what seemed to me to be the extraordinary action of the clerical changing of an order of the Court on the basis of a telephone call from only one of the parties. I believed that the attorneys for all the parties, fully familiar with adoptive placements, would understand our attorneys' letters of February 1 and 2 to refer to consents, for Spence-Chapin would not and did not have any other participation to contribute to the Oregon adoption proceeding. I also knew that Mr. Hunt, the attorney for the McMurricks in Oregon, had been informed of the reinstatement of the stays against Spence-Chapin's forwarding its consents. Accordingly, I believed it not improper for us to await any further action or requests by the other parties or any further action of the Court, rather than taking voluntary action detrimental to the children's best interests as I saw those interests, inasmuch as the other parties, the Court and Mr. Hunt had been apprised of the situation. Spence-Chapin did not, beyond forwarding the consents on January 28, participate further in any way in the Oregon adoption proceeding and did not learn of the adoption until February 10 when informed by our attorneys whom I understand learned of them from Mr. Bass". On February 2, 1982, O'Shea of the Simpson firm wrote a letter to the other attorneys in this proceeding. O'Shea's concluding remarks are noteworthy: "Having previously advised Greg Allen Hunt, attorney for the McMurricks in Oregon, of the original order, Mr. Nowak advised Mr. Hunt (who responded to a call placed by Mr. Reardon) that circumstances had changed and that he should not conclude that the previous orders of the Family Court appealed from had been stayed in their entirety. As was stated in Mr. Nowak's letter to Mr. Galdi, our client acted on the order as originally filed and intended to continue to act in accordance with such order in such form. In view of Mr. Reardon's conversation with Mr. Berger of yesterday, however, our client will take no further steps in this regard". Spence-Chapin would take no further action upon the original order because there was no further action to take on that original order. Spence-Chapin's consents had already been mailed to Oregon. Mr. O'Shea leaves this crucial detail from his letter and leaves the court and the other parties with the impression that the *status quo* would be maintained. On February 2, 1982, Roy Reardon had still another conversation with deputy clerk Berger. According to Reardon, the following exchange took place with Berger: "I again repeated to Mr. Berger that our client had taken action on the basis of the order as originally entered. Mr. Berger told me that he had concluded that nothing would happen in Oregon, but I told him that we were obviously not in a position to control that situation beyond having communicated the change in the order to Mr. Hunt. Mr. Berger also told me in that telephone conversation that the Court had received a letter from the Phillips Nizer firm, as new co-counsel with Mr. Bass for the Bryants, asking for a conference with the Court. (No copy of this letter had been received by us, and none was received for another two days.) Mr. Berger told me that he believed a conference was unnecessary, and I told him that of course we were available if he felt one was in order". On February 2, 1982, neither deputy clerk Berger nor any other individual in this court was aware that consents had been mailed to

Oregon and that the adoption was going forward. Therefore, it is very difficult to believe that Berger, unaware of the true situation in Oregon, would advise Reardon that nothing would happen in Oregon. Reardon, together with the other attorneys in his firm, had an obligation to come forward with that information. Through his silence, Reardon also delayed an informal hearing that would have clarified matters before the adoptions were effected. On February 3, 1982, deputy clerk Galdi mailed a letter to the parties informing them, yet again, of the correction. There is an indication in the papers that the children were adopted in Oregon on February 5, 1982. On February 10, 1982, it became generally known to all parties that the adoption of the three children had been finalized in Oregon. Spence and the Simpson firm assert that they did not receive notice of the adoption until February 10, 1982. An informal conference was held in this court on February 11, 1982 but the arguments made thereat will not be considered since no formal record is available. The attorneys from the Simpson firm are officers of the court and they are expected to advance the ends of justice (*People ex rel. Karlin v Culkin,* 248 NY 465, 470, 471). The Simpson firm was under an obligation, as an officer of the court, to (i) inform its client that the original order contained an obvious clerical error, (ii) seek a clarification of the original order before its client mailed the consents, (iii) advise its client that the consents should be withdrawn after it had been apprised on January 29, 1982 of the corrected order, (iv) inform all the parties that the consents had been forwarded and were still in force, and (v) advise the Oregon court of the corrected order if its clients failed to do so. There is no indication in the papers that the Simpson firm fulfilled these obligations. Edwards, in her affidavits, does not explicitly state whether she acted in accordance with or against the advice of counsel. In either event, Spence should have informed the other parties to this proceeding that the consents had been forwarded on January 28, 1982. Likewise, when it learned of the corrected order on February 1, 1982, Spence should have immediately withdrawn its consents. Based upon the undisputed evidence, we find that the Simpson firm and Spence-Chapin did not fulfill all their obligations of notification to (i) this court, (ii) the parties herein, (iii) the Oregon court, and (iv) the parties in the Oregon proceeding. We further find that Spence-Chapin should have withdrawn its consents before the adoptions were effected. Accordingly, Spence-Chapin is directed to serve upon the (i) Oregon court, (ii) PLAN, and (iii) all parties to this and the Oregon proceedings, a copy of (i) the withdrawal of its consents to the adoptions, (ii) this decision, and (iii) the order entered herein. The Simpson firm is also directed to serve a copy of this decision and the order entered herein upon (i) the Oregon court, (ii) PLAN, and (iii) all parties to this and the Oregon proceedings. If Spence-Chapin fails to file a withdrawal of the consents, then the Simpson firm is additionally directed to serve, as ordered above, an affidavit stating their client's noncompliance with that directive. Spence-Chapin and the Simpson firm are directed to comply within three days after service of a copy of the order entered herein with notice of entry. They are directed to file copies of all papers, with proof of service, promptly with the clerk of this court. If so advised, any other party may seek relief in the Oregon court through the service of this order or otherwise. This matter will remain before the Appellate Division pending notification from Spence-Chapin and the Simpson firm. To the extent indicated, the motions by the foster parents are granted. Concur — Murphy, P. J., Markewich and Fein, JJ.

Kupferman, J., concurs in part and dissents in part in a memorandum as follows: We have a situation where former foster parents who desired to adopt were rejected by the Commissioner of Social Services on the ground of age.

Although we may disagree, we are bound by the determination of the Court of Appeals in *Matter of O'Rourke v Kirby* (54 NY2d 8), which finds that such a denial is not arbitrary or capricious. Accordingly, we are concerned only by what seems to be a failure of communication with regard to the interim proceedings here, prior to the time that a court in Oregon approved the adoption of the child by a family there. As this court's memorandum points out, the person in charge for Spence-Chapin, the adoption agency, took it upon herself to forward consents in the face of what should have appeared to be a stay by this court of such action, and counsel for the agency in what seems to be a confusing interpretation of the action of this court, did not fully impress upon the agency the need for compliance. Therefore, while I concur with the conclusion that the matter should be returned to the *status quo ante* until it has received full appellate consideration, and that the Oregon court should be so notified, I cannot agree that counsel for the adoption agency should be considered delinquent.