**Emerson W. DUNTON, Jr.,
Plaintiff-Appellee,**

v.

**COUNTY OF SUFFOLK, STATE of NEW YORK, Suffolk County Police Department, County of Suffolk, State of New York, Robert Pfeiffer, Angela Pfeiffer, "Richard Roe," "James Doe" and "John Poe," the latter being fictitious names of real persons, members of the Suffolk County Police Department, Defendants,**

**Angela Pfeiffer, and Robert Pfeiffer, Defendants-Appellants.**

**Nos. 542, 543, Dockets 83–7384, 83–7814.**

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1983.

Decided Feb. 28, 1984.

See also D.C., 580 F.Supp. 974.

Charles T. DeMartin, Hauppauge, N.Y. (DeMartin, Kranz, Davis & Hersh, Hauppauge, N.Y., of counsel), for defendant-appellant Robert Pfeiffer.

Robert T. Rinear, West Babylon, N.Y. (Leonard Symons, Young, Symons & Rinear, West Babylon, N.Y. of counsel), for defendant-appellant Angela Pfeiffer.

Stanley L. Shapiro, Setauket, N.Y., for plaintiff-appellee.

Before OAKES and MESKILL, Circuit Judges, and NEAHER,* District Judge.

MESKILL, Circuit Judge:

Robert Pfeiffer appeals from a judgment entered against him after a jury trial in the United States District Court for the Eastern District of New York, Glasser, J., awarding Emerson Dunton, Jr. $10,000 compensatory damages and $10,000 punitive damages on a state law battery claim. Angela Pfeiffer appeals from a judgment entered against her in the same trial,

awarding Dunton $5,000 compensatory damages and $20,000 punitive damages for malicious prosecution. We reverse the judgment against Robert Pfeiffer and remand for a new trial and reverse the judgment against Angela Pfeiffer and remand to the district court with instructions to dismiss the complaint.

## I

Defendant-appellant Angela Pfeiffer attended a retirement party for a fellow employee on the evening of May 20, 1981. As the party broke up, plaintiff-appellee Emerson Dunton, Jr., a co-worker and attendee, accompanied Ms. Pfeiffer to her car. The accounts of the subsequent events differ; Ms. Pfeiffer claims that Dunton began making improper advances while they were seated in her car, while Dunton asserts that Ms. Pfeiffer willingly participated in the maneuvers. Defendant-appellant Robert Pfeiffer, Angela's husband and also a Suffolk County police officer, came upon the scene in his patrol car, threw Dunton out of Ms. Pfeiffer's car, struck him repeatedly and left him lying in the parking lot. Dunton suffered non-disabling and non-permanent injuries from the incident.

Dunton was arrested after Angela Pfeiffer filed a criminal complaint on June 18, alleging third degree sexual abuse in violation of N.Y.Penal Law § 130.55 (McKinney 1975). When the matter did not come to trial by November 16, Dunton moved to dismiss on the ground that the sixty day limit for trial, N.Y.Crim.Proc.Law § 30.30 (McKinney 1981 & Supp.1983), had been exceeded. The motion was denied and Dunton moved for reconsideration. On December 23, the Suffolk County district court concluded that it had erred in computing the sixty day period and that sixty-seven days were actually chargeable to the prosecution. Accordingly, it granted the motion to dismiss. The Appellate Division affirmed. *See* App. at 1342–47.

---

* Honorable Edward R. Neaher, United States District Judge for the Eastern District of New York, sitting by designation.

On August 17, 1981, Dunton filed this action against Suffolk County, the Suffolk County Police Department and the Pfeiffers seeking $50 million compensatory damages, $50 million punitive damages and reasonable attorney's fees. Dunton alleged violations of 42 U.S.C. § 1983 (Supp. III 1979)[1] by Officer Pfeiffer and his patrol car partner for the actions in the parking lot, by a desk sergeant for failing to make a report, and by Officer Pfeiffer and other members of the police department for covering up and conspiring to cover up the incident. He also alleged that the Pfeiffers violated 42 U.S.C. §§ 1983 and 1985 (Supp. II 1978)[2] by conspiring to cover up the incident with Angela's complaint of sexual abuse. Finally, he alleged pendent state claims of assault and battery against Robert Pfeiffer and false arrest and malicious prosecution against Angela Pfeiffer.

By local law, Suffolk County provides for the representation of its employees sued under section 1983. See App. at 1325–28. Robert Pfeiffer and Suffolk County were represented in this action by the office of the Suffolk County Attorney (County Attorney). An indication that this joint representation might create a conflict came in a form letter from the County Attorney to Robert Pfeiffer dated August 25, 1981 suggesting that because "plaintiff has alleged that [Pfeiffer] acted in [his] personal capacity and/or has demanded punitive damages" and because of possible counterclaims, Pfeiffer should contact private counsel "for such additional advice as may be appropriate." App. at 1199–200. Angela Pfeiffer retained her own attorney.

The County Attorney's answer to Dunton's complaint included an affirmative defense that Robert Pfeiffer was acting in good faith pursuant to his official duties and responsibilities. However, it was the last time that the defense contended that Pfeiffer was acting in good faith as a police officer. The County Attorney told the jury in opening statements that Pfeiffer "acted as a husband, not even as an officer," App. at 135. Similarly, he told the jury in closing statements that it was obvious Pfeiffer "was acting as an irate husband rather than a police officer," App. at 989, and that he acted "with the human spirit as a husband, not really as an officer," App. at 995. This was clearly the County Attorney's theory of the case, as he made similar statements to the trial judge. See App. at 98–102, 779–81.

All of Dunton's claims were dismissed by the court as meritless except for the section 1983 claim against Robert Pfeiffer and the state law claims of battery against Robert Pfeiffer and malicious prosecution against Angela Pfeiffer. The jury found Robert Pfeiffer not liable under section 1983, but awarded $10,000 compensatory and $10,000 punitive damages on the battery claim. Angela Pfeiffer was held liable for $5,000 compensatory and $20,000 punitive damages for malicious prosecution.

Robert Pfeiffer then made a series of post-trial motions relating to the County Attorney's conflict of interest. While the district court acknowledged that there was a conflict, it denied the motions on the ground that Pfeiffer was not prejudiced thereby. It stated that even if Pfeiffer had

---

1. 42 U.S.C. § 1983 (Supp. III 1979) states in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. 42 U.S.C. § 1985(3) (Supp. II 1978) states in pertinent part:

   If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

been shown to be acting under color of state law, damages would still have been awarded for the unjustified battery, and that punitive damages would also have been awarded in any event. *See* 580 F.Supp. 974, 975–76 (E.D.N.Y.1983).

## II

Robert Pfeiffer appeals on the ground that the Suffolk County Attorney failed to represent his interest adequately because of the attorney's conflicting representation of Suffolk County. Specifically, Officer Pfeiffer claims that it was in his interest to assert his immunity from section 1983 liability based on good faith actions within the scope of his employment. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19 & n. 30, 102 S.Ct. 2727, 2738–39 & n. 30, 73 L.Ed.2d 396 (1982); *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Pfeiffer contends that the attorney undermined the good faith immunity defense by repeatedly stating that Pfeiffer acted not as a police officer but as an "irate husband."

Municipalities commonly provide counsel for their employees and themselves when both municipality and employee are sued. The Suffolk County Attorney's representation of Officer Pfeiffer here was mandated by statute. *See* Suffolk County Local Law No. 30 (1981), *reprinted in* App. at 1325–28. Prior to 1978, such representation would not have caused a conflict because municipalities were not "persons" subject to section 1983 liability. *See Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961). Thus, a municipality would have had no reason to give an employee less than full representation.

■ However, since the Supreme Court's decision in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities can be held liable under section 1983 for employees' actions taken pursuant to municipal policy. After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict. *See Van Ooteghem v. Gray,* 628

F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds,* 654 F.2d 304 (5th Cir.1981) (en banc) (per curiam), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

■ Because of the imminent threat of a serious conflict, disqualification would have been appropriate here even before any proceedings began. *See Shadid v. Jackson,* 521 F.Supp. 87, 88–90 (E.D.Tex.1981) (granting motion to disqualify in virtually identical case because of "high potential for conflicting loyalties"). *Cf. Armstrong v. McAlpin,* 625 F.2d 433, 444–46 (2d Cir. 1980) (en banc) (disqualification appropriate when conflict will taint a trial by affecting attorney's presentation of a case), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). This conflict surfaced when the County Attorney stated that Pfeiffer was not acting under color of state law but rather as an "irate husband." This was a good defense for the county, which eventually was dismissed from the action. However, it was not in the best interest of Pfeiffer, who was ultimately found liable in his individual capacity. Pfeiffer's failure to object to the multiple representation before or during trial did not constitute a waiver. As a layman, he could not be expected to appreciate his need to prove a good faith defense. Furthermore, he was never advised that his

counsel would take positions directly contrary to his interest.

■ The County Attorney's multiple representation in this case was inconsistent with his professional obligation to Officer Pfeiffer. *See Hafter v. Farkas,* 498 F.2d 587, 589 (2d Cir.1974). It was also inconsistent with Canons 5 and 9 of the ABA Code of Professional Responsibility.[3] A violation of Canons 5 and 9 of the Code, which call for exercising independent judgment on behalf of a client and avoiding any appearance of impropriety, provides ample grounds for disqualifying an attorney. *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). As soon as the County Attorney began to undermine Officer Pfeiffer's good faith immunity defense by stating that Pfeiffer acted as an "irate

husband" and not as a police officer, he was not only failing to act as a conscientious advocate for Pfeiffer, but was acting against Pfeiffer's interest. The seriousness of this conflict made disqualification appropriate. *Shadid v. Jackson,* 521 F.Supp. at 88–90.[4]

■ Where a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation. This Court has stated that "[w]hen a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests." *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977).

---

3. Canon 5, "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client," includes the following:

EC [Ethical Consideration] 5–1 . . . Neither [a lawyer's] personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

. . . .

EC 5–15 If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests, and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.

EC 5–16 . . . [B]efore a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent.

DR [Disciplinary Rule] 5–101(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

. . . .

DR 5–105(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered

employment, or if it would be likely to involve him in representing differing interests, *except to the extent permitted under DR 5–105(C)* [which permits multiple representation with full disclosure where all interests can be adequately represented].

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(footnotes omitted).

In addition, Canon 9, "A Lawyer Should Avoid Even the Appearance of Professional Impropriety," has been invoked by this Court in attorney conflict cases. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 234–35 (2d Cir.1977).

The new Model Rules of Professional Conduct, adopted by the ABA House of Delegates on August 2, 1983 but not yet adopted by the Bars of the State of New York or the Eastern District of New York, contain similar provisions and language. *See* Rules 1.7, 8.4.

4. We need not create here a *per se* rule that disqualification is automatic in conflicts of this nature, although considering the overall responsibility of the court to supervise the ethical conduct of the Bar, *see, e.g., In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977), such a rule might indeed be appropriate. *Cf. Kevlik v. Goldstein,* 724 F.2d 844, 849 (1st Cir.1984) (in civil attorney conflict case, it is "more important that unethical conduct be prevented than that [a party] have an unfettered right to counsel of its choice").

■ There are at least two reasons why a court should satisfy itself that no conflict exists or at least provide notice to the affected party if one does. First, a court is under a continuing obligation to supervise the members of its Bar. *E.g., In re Taylor*, 567 F.2d at 1191; *see Musicus v. Westinghouse Electric Corp.*, 621 F.2d 742, 744 (5th Cir.1980) (per curiam) (district court obligated to take measures against unethical conduct occurring in proceedings before it). Second, trial courts have a duty "to exercise that degree of control required by the facts and circumstances of each case to assure the litigants of a fair trial." *Koufakis v. Carvel*, 425 F.2d 892, 900–01 (2d Cir.1970); *see* ABA Code of Judicial Conduct, Canon 3(A)(4). When a litigant's statutorily appointed counsel is acting against the litigant's interests because of a conflict that the litigant has not been informed of and cannot be expected to understand on his own, the litigant is not receiving a fair trial. *Cf. Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (divided loyalties of counsel may create due process violation).

In holding that the trial court had a duty to inform Pfeiffer of the conflict, we in no way excuse the conduct of the other attorneys here. Attorneys are officers of the court, *Clark v. United States*, 289 U.S. 1, 12, 53 S.Ct. 465, 468, 77 L.Ed. 993 (1933), and are obligated to adhere to all disciplinary rules and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule. ABA Code of Professional Responsibility, DR 1–102(A), 1–103(A); *see In re Walker*, 87 A.D.2d 555, 560, 448 N.Y.S.2d 474, 479 (1st Dep't 1982) (as officers of court, attorneys required to notify parties and court of error in court order). The County Attorney had to know of the serious conflict his multiple representation created, *see, e.g.*, App. at 1163, and knew or should have known that he could not fulfill his ethical obligations to the county without seriously undercutting Pfeiffer's legal position. The

plaintiff's attorney should also have been aware of the problem and should have called it to the attention of the court. *See Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 345 F.Supp. 93, 98 (S.D.N.Y.1972) ("[T]hose attorneys representing other parties to the litigation were obligated to report relevant facts [regarding conflict of interest of opponent's attorney] to the Court ....") (citing DR 1–102).

■ Neither do we believe that Pfeiffer waived his objections to multiple representation by failing to object before or during trial.[5] The letter to Pfeiffer only said that there was a possibility of punitive damages, personal liability or counterclaims, and only suggested that Pfeiffer contact outside counsel. It did not say anything about the most serious conflict, that the County Attorney would take a basic position throughout the litigation which was adverse to Pfeiffer's interest. *See* App. at 1083–84 (Affidavit of R. Pfeiffer). Pfeiffer presumably knew little or nothing about the law of attorney conflicts and could not be expected to discern the nature of the conflict. He would naturally rely on his attorney to protect him. *See Wood v. Georgia*, 450 U.S. at 265 n. 5, 101 S.Ct. at 1100 n. 5 (lawyer on whom conflict-of-interest charge focuses is unlikely to concede that his actions were improper).

The district court acknowledged that there was a conflict in Pfeiffer's representation but denied the motion for a new trial in the mistaken belief that the conflict was not prejudicial. We do not agree. If Pfeiffer's first trial had been fair, he might have escaped liability altogether. The county had agreed to indemnify Pfeiffer for compensatory damages. App. at 1160. If the jury found that Pfeiffer was acting in good faith as a police officer, it might not have awarded punitive damages. We believe that because the jury never had a chance to consider Pfeiffer's good faith immunity defense, Pfeiffer did not receive the fair trial

---

5. We assume arguendo, without deciding the question, that the district court could allow Pfeiffer to waive his objections to multiple representation given a serious conflict such as the instant one.

to which he was entitled. *See Turner v. Gilbreath*, 3 Kan.App.2d 613, 599 P.2d 323 (1979) (reversing trial court's failure to grant new trial); *see also Jedwabny v. Philadelphia Transportation Co.*, 390 Pa. 231, 135 A.2d 252 (1957) (affirming trial court's decision to grant new trial), *cert. denied*, 355 U.S. 966, 78 S.Ct. 557, 2 L.Ed.2d 541 (1958); *In re Estate of Richard*, 4 Kan.App.2d 26, 602 P.2d 122 (1979) (violation of Code of Professional Responsibility that prevents a fair trial constitutes reversible error).

The conflict of interest not only prejudiced Pfeiffer, it may also have resulted in an improper benefit to the municipal defendants. The claim that Pfeiffer acted under color of state law was never presented to the jury in the trial below. If Pfeiffer had the opportunity to contend that he did act under color of state law but was immune from liability based on good faith actions within the scope of his duties, Suffolk County or the Police Department may still have been found liable under section 1983. While Dunton did not cross-appeal on this issue, this Court may consider questions of law not raised by the parties in order to prevent injustice. *See Hormel v. Helvering*, 312 U.S. 552, 556–57, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). Because the liability of the County and the Police Department were not determined in a fair trial, failure to reinstate those parties in the action would work an injustice on Dunton, who did not create the conflict of interest at issue here.

Accordingly, we vacate the judgment against Robert Pfeiffer and the orders dismissing Suffolk County and the Suffolk County Police Department and remand the entire cause of action against them for a new trial.[6]

## III

Angela Pfeiffer raises for the first time on appeal the issue of subject matter jurisdiction. She contends that the pendent state claims should have been dismissed when the federal claims against her were dismissed as frivolous.

Although we would not normally consider an issue not raised below, lack of subject matter jurisdiction may be raised at any time and indeed must be raised *sua sponte* by the court. Fed.R.Civ.P. 12(h)(3); *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 588, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939).

The trial court ruled that it could properly exercise pendent jurisdiction over Ms. Pfeiffer because "the Federal claims against [her] were not dismissed until well into the trial stage of this action." 580 F.Supp. at 977. Apparently the court predicated this holding on a line of cases suggesting that there should be no dismissal of the pendent state claim if "substantial time and energy have been expended looking toward the resolution of a dispute *that plaintiffs were entitled to bring in a federal court.*" *Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970) (emphasis added). But that rule applies only if the plaintiff was entitled to bring his civil rights actions in a federal court in the first place.

Federal subject matter jurisdiction does not exist "where the claim set forth in the pleading is plainly unsubstantial," a category that includes claims that are "obviously without merit." *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933). Thus, the district court has an obligation to examine the substantiality of the federal claims throughout the litigation. Even if the federal claims are discovered to be patently meritless only after the trial begins, once that discovery is made the state claims must be dismissed along with the federal ones. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 727, 86 S.Ct. 1130, 1138, 1139, 16 L.Ed.2d 218 (1966) (pendent jurisdiction can only be invoked when fed-

---

6. The original complaint also included causes of action against fictitiously named members of the Suffolk County Police Department. Dunton, however, never amended his complaint to supply those parties' real names. Because there was never any adjudication involving these parties, our decision does not affect them.

eral claims are substantial, and substantiality issue "remains open throughout the litigation"); *Crane Co. v. American Standard, Inc.*, 603 F.2d 244, 254 (2d Cir.1979) ("Even where substantial time and resources have been expended in the trial of an action in federal court, pendent state claims must be dismissed if it later is determined that there never existed a federal claim sufficient to invoke the jurisdiction of the federal court.").

■■■ The federal claims against Angela Pfeiffer were patently meritless and insubstantial. There is no evidence in the record that Angela Pfeiffer was acting under color of state law and plaintiff's counsel even admitted that no cause of action was being asserted against Ms. Pfeiffer under section 1983. App. at 786–87. There is no evidence in the record to support a conspiracy charge under section 1983. *See* App. at 938–39. Finally, a section 1985(3) complaint must allege an "invidiously discriminatory animus" aimed at depriving an individual of equal protection of the laws or equal privileges and immunities. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Orshan v. Anker*, 489 F.Supp. 820, 823–24 (E.D.N.Y.1980). Plaintiff adduced no evidence to show discriminatory animus and no such allegation appeared on the face of the complaint.[7]

Thus, we hold that the federal civil rights claims were so insubstantial that the district court did not have jurisdiction to retain the state claims. Were we to hold otherwise, litigants could move their state claims into federal court by the simple device of joining groundless federal claims unsupported by any facts. *See Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 718 (S.D.N.Y.1976) (pendent jurisdiction fails when federal civil rights claim insubstantial); *Burnett v. McNabb*, 565 F.2d 398, 400 (6th Cir.1977) (per curiam) ("Transfer of jurisdiction to the federal courts cannot be accomplished by ... filing an unsubstantial action under 42 U.S.C. § 1983, coupled with a prayer for the exercise of pendent jurisdiction.").[8]

Accordingly, we reverse and remand the cause against Angela Pfeiffer to the district court with instructions to dismiss.[9]

---

7. Even were the federal claims here substantial, this Court has stated that it may be an abuse of discretion to try a pendent state claim when the underlying federal claims are dismissed for failure to state a claim and no prejudice would result from requiring plaintiff to try his case in state court. *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

8. Our decision here does not preclude Dunton from bringing his action in state court. Because the action is not being terminated by voluntary dismissal, failure to prosecute or judgment on the merits, Dunton may sue in state court within six months of the date of this action's dismissal. N.Y.Civ.Prac.Law § 205(a) (McKinney Supp.1983). *See Gaines v. City of New York*, 215 N.Y. 533, 539, 109 N.E. 594, 596 (1915) (Cardozo, J.) (dismissal of first action for want of subject matter jurisdiction tolled statute during pendency of action); *Brown v. Bullock*, 17 A.D.2d 424, 427, 235 N.Y.S.2d 837, 840 (1st Dep't 1962) (per curiam) (pendency of action commenced in Southern District of New York and dismissed for lack of diversity jurisdiction would toll statute).

9. In order to recover for malicious prosecution, plaintiff must show that the prosecution was terminated in his favor. When the termination is not on the merits, the issue becomes whether the failure to proceed implies that there were no reasonable grounds for the prosecution. *Russo v. New York*, 672 F.2d 1014, 1019 (2d Cir.1982), *vacated and remanded on other grounds*, 721 F.2d 410 (2d Cir.1983) (per curiam). A dispute as to the factual circumstances involving the termination of the prosecution is to be resolved by the jury; otherwise, the issue of favorable termination is one of law. *See Russo*, 672 F.2d at 1020; *Loeb v. Teitelbaum*, 77 A.D.2d 92, 98, 432 N.Y.S.2d 487, 491–92 (2d Dep't 1980), *modified*, 80 A.D.2d 838, 439 N.Y.S.2d 300 (2d Dep't 1981).

While we need not reach the merits of this issue because of our dismissal on jurisdictional grounds, we note that the trial court incorrectly charged the jury that favorable termination had been established as a matter of law. *See* App. at 1055. The jury should have heard evidence as to whether the 67 days charged to the prosecution implied that there were no reasonable grounds for Angela Pfeiffer's sexual abuse complaint. A party who alleges malicious prosecution should have in the record facts to support a "no reasonable grounds" argument.

In addition, the facts of this case may show that favorable termination had *not* been established. First, Dunton filed his malicious prose-

cution claim on August 17, 1981, long before the termination of the criminal action on December 28, 1981. App. at 2, 1343. Because the complaint must be read as of the date it is filed, we question how favorable termination could have been shown as of August 17 when there was no termination until four months later. Second, Dunton's complaint was filed exactly 60 days

after Angela Pfeiffer's June 18 sexual abuse complaint. See App. at 2, 1342. The sexual abuse action was terminated because more than 60 days were charged to the prosecution in bringing the case to trial. See N.Y.Crim. Proc.Law § 30.30 (McKinney 1981 & Supp. 1983). But as of the date of Dunton's action, the 60 day limit could not have been exceeded.