Jonathan SMITH, Plaintiff,

v.

The CITY OF NEW YORK, a municipal entity existing and otherwise created under the laws of the State of New York, the New York City Police Department, a governmental agency, Robert McGuire, Police Commissioner of the New York City Police Department, Anthony Capodieci, Police Officer in and with the New York City Police Department, F. Sherman, Police Officer in and with the New York City Police Department, Defendants and Third Party Plaintiffs.

No. 82 Civ. 4457–CSH.

United States District Court,
S.D. New York.

April 1, 1985.

James I. Meyerson, New York City (Jonathan Moore, New York City, of counsel), for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City (Judith A. Levitt, Elissa Hutner, Jonathan Pines, New York City, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Months after discovery in this case was closed by Court order, and literally upon the eve of trial, plaintiff has made a number of motions. This opinion addresses them.

### I.

*History of the Litigation*

This action arises out of an altercation between plaintiff Jonathan Smith and two

New York City Police Department officers, the individual defendants Anthony Capodieci and Frederick Sherman, during the early morning hours of December 25, 1981. Smith was involved in an automobile accident. Officers Capodieci and Sherman responded to the scene. An altercation broke out between plaintiff and the officers. It is not necessary for present purposes to recite the respective parties' accounts of the incident, which differ markedly. It is sufficient to say that a scuffle ensued; plaintiff was placed under arrest by Capodieci and Sherman; plaintiff alleges that he sustained personal injuries at the hands of the two police officers; and the police officers allege that they sustained injuries at the hands of plaintiff.

Plaintiff commenced this action, alleging constitutional claims within the context of the civil rights statutes, 42 U.S.C. §§ 1981 and 1983. Plaintiff sought compensatory and punitive damages against all defendants.

The Office of the Corporation Counsel of the City of New York (hereinafter "Corporation Counsel") appeared and answered on behalf of all defendants, including the two police officers. In an answer served on September 1, 1982, the Corporation Counsel asserted counterclaims on behalf of all defendants, including counterclaims on behalf of the police officers against plaintiff for intentional assault. Issue was fully joined on April 20, 1983 when plaintiff answered the counterclaims.

At an initial pre-trial scheduling conference, on November 5, 1982, the Court had specified June 6, 1983 for the completion of all discovery. That deadline was subsequently extended to August 6, 1983. Discovery disputes arose which the Court referred to Magistrate Gershon in an Order dated July 11, 1983. Magistrate Gershon advised the Court in a memorandum dated January 11, 1984 that all outstanding discovery disputes had been resolved. At a hearing on March 9, 1984, the case was marked trial ready. It was called for trial on December 17, 1984. On December 11, 1984, plaintiff noticed the first of the present motions. Other motions shortly followed.

The presently pending motions on behalf of plaintiff are as follows:

(1) Motion to dismiss the individual defendants' counterclaims, or in the alternative, to disqualify the Corporation Counsel from prosecuting them. Filed December 11, 1984.

(2) Motion for leave to conduct additional discovery. Filed January 2, 1985.

(3) Motion for leave to amend the complaint "to assert and clarify *Monell* claims against the City of New York and to otherwise assert claims against the defendant officers Sherman and Capodieci." Filed February 6, 1985.

I discuss these motions separately.

## II.

*Plaintiff's Motion to Dismiss the Individual Defendants' Counterclaims, or in the Alternative, to Disqualify Corporation Counsel from Prosecuting Them*

Plaintiff asserts two grounds for his motion to dismiss the individual defendants' counterclaims, or in the alternative to disqualify the Corporation Counsel from prosecuting them. First, plaintiff argues that the pertinent statutory scheme prohibits the Corporation Counsel from rendering legal services to individuals in aid of private claims. Second, plaintiff asserts that even if the Corporation Counsel is not prohibited from such representation by statute, the ethical conflicts presented are such that the Corporation Counsel should be disqualified.

I consider these contentions in turn. Preliminarily, it is appropriate to observe that, whatever its timing, plaintiff's invocation of professional ethics must be carefully considered. Unlike motions to amend pleadings or demands for pre-trial discovery, which as noted *infra* may be denied because they are untimely, an allegation of unethical professional conduct triggers the Court's continuing supervisory responsibility. *Dunton v. County of Suffolk,* 729 F.2d 903, 908 (2d Cir.1984). Plaintiff's con-

tention could certainly have been made earlier; but its timing is not a factor in the Court's decision.

### (a) *Authority of the Corporation Counsel to Represent the Police Officers on their Counterclaims*

The Corporation Counsel is a creature of statute. Accordingly, in order to determine whether or not he is authorized to represent the defendant police officers on their counterclaims, one must first turn to the applicable legislative provisions.

I begin with section 50–k of the General Municipal Law of New York State, 23 McKinney's Consol.L. of N.Y. (Supp.1984). This statute is entitled: "Civil actions against employees of the city of New York." The statute deals generally with the defense and indemnification by the city of an employee in any civil action or proceeding in any state or federal court. Specific reference is made to actions such as this one, commenced under the federal civil rights statutes.

Section 50–k(2) deals with defense. It provides:

"At the request of the employee and upon compliance by the employee with the provisions of subdivision four of this section, the city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court including actions under sections nineteen hundred eighty-one through nineteen hundred eighty-eight of title forty-two of the United States code arising out of any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred. This duty to provide for a defense shall not arise where such civil action or proceeding is brought by or on behalf of the city or state or any agency of either."

Section 50–k(3) deals with indemnification. It provides:

"The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim approved by the corporation counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee."

Section 50–k(4) provides that the city's duty to defend or indemnify an employee is conditioned upon delivery to the Corporation Counsel by the employee of the summons, complaint or other charging instrument within ten days of service upon the employee; and "the full cooperation of the employee in the defense of such action or proceeding and in defense of any action or proceeding against the city based upon the same act or omission, and in the prosecution of any appeal."

Section 50–k(9) provides in part:

"The provisions of this section shall not be construed in any way to impair, alter, limit, modify, or abrogate or restrict . . . any right to defense and/or indemnification provided for any governmental officer or employee by, in accordance with, or by reason of, any other provision of state, federal or local law or common law."

The powers and obligations of the Corporation Counsel are also addressed by the New York City Charter and the Administrative Code of the City of New York. Section 394(a) of the Charter provides:

"Except as otherwise provided in this chapter or other law, the corporation

counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested."

Section 394(c) of the Charter provides: "Except as otherwise provided in this chapter or other law, the corporation counsel shall have the right to institute actions in law or equity and any proceedings provided by law in any court, local, state, or national, to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city or of any part or portion thereof, or of the people thereof, or to collect any money, debts, fines or penalties [sic] or to enforce the laws. He shall not be empowered to compromise, settle or adjust any rights, claims, demands or causes of action in favor of or against the city, and he shall not permit, offer or confess judgment against the city, or accept any offer of judgment in favor of the city without the previous approval of the comptroller, except that with regard to matters involving excise and nonproperty taxes, such previous written approval shall be obtained from the finance administrator; provided, however, that this inhibition shall not operate to limit or abridge the discretion of the corporation counsel in regard to the proper conduct of the trial of any action or proceeding or to deprive such corporation counsel of the powers and privileges ordinarily exercised in the courts of litigation by attorneys-at-law when acting for private clients."

Section 395–1.0 of the Administrative Code provides:

"The corporation counsel, in his discretion may appear, or direct any of his assistants to appear, in any action or proceeding, whether criminal or civil, which may be brought against any officer, subordinate or employee in the service of the city, or of any of the counties contained therein, by reason of any acts done or omitted by such officer, subordinate or employee, while in the perform-ance of his duty, whenever such appearance is requested by the head of the agency in which such officer, subordinate or employee is employed or whenever the interests of the city require his appearance. The head of the agency in which such officer, subordinate or employee is employed shall submit all pertinent papers and other documents to the corporation counsel."

Plaintiff cites no case holding that, under this statutory scheme, the Corporation Counsel lacks authority to represent a city employee on his counterclaim asserted in an action commenced against him. It is apparent from the motion papers that in a number of cases, the Corporation Counsel has done just that, without any lack of authority being suggested. In the one case cited to counsel and disclosed by my research in which the Corporation Counsel's authority to represent a police officer on his counterclaim was challenged, Judge Goettel held for this Court that the statutory scheme conferred such authority. *Henry v. City of New York and Police Officer James Delaney*, 84 Civ. 2150 (GLG) (S.D.N.Y., decided August 15, 1984).

In *Henry*, Judge Goettel read General Municipal Law § 50–k(2) together with the New York City Charter § 394(c) to confer the necessary authority upon the Corporation Counsel. Judge Goettel noted that, in cases of this nature, the police officer's counterclaim is compulsory under Rule 13(a), F.R.Civ.P., which requires that a counterclaim be pleaded "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction." Judge Goettel derived the Corporation Counsel's authority not only from the specific provisions of section 50–k(2) in respect of defense, but also from the broad authority conferred upon the Corporation Counsel by section 394(c) of the Charter to exercise all of "the powers and privileges ordinarily exercised in the courts of litiga-

tion by attorneys-at-law when acting for private clients." He wrote at slip op. 3–4:

> "Clearly, the filing of a counterclaim is a power and privilege 'ordinarily exercised in the courts of litigation by attorneys-at-law when acting for private clients' and was an act envisioned by the drafters of New York City Charter. Furthermore, Delaney has executed an agreement to reimburse his employer, New York City, for any amounts it would have to pay Henry, out of any amounts Delaney may recover on the counterclaim. Therefore, New York City can be regarded as a genuine party-in-interest to Delaney's counterclaim."

The present plaintiff contends that *Henry* was wrongly decided, primarily because Judge Goettel laid too much emphasis upon the compulsory nature of the police officer's counterclaim, and not enough emphasis upon the issue of Corporation Counsel's authority to prosecute it. On the latter point, plaintiff stresses that section 50–k(2) of the General Municipal Law authorizes the city to "provide for the defense of an employee...." A counterclaim, plaintiff argues, cannot be regarded as "defense."

■ I do not agree. When a citizen asserts a claim against a police officer, the Corporation Counsel is obligated to give, and the officer is entitled to receive, a spirited, thorough, energetic and professional defense. Plaintiff does not really question that general principle; nor, under the statutory scheme, could he reasonably do so. But plaintiff's implementation of that principle into practice is strained and unconvincing. It is that Corporation Counsel may always defend, but may never counterclaim. The argument assumes that these legal postures are separate, independent, discrete, and unrelated to each other.

Trial lawyers know in their hearts that this is not a depiction of the real world. The maxim that "the best defense is often a good offense" applies to litigation as in other areas. Indeed, it is particularly applicable to a case such as the one at bar.

A fight occurs. All combatants—the soon to be plaintiff citizen and the soon to be defendant police officers—are injured.[1] The combatants blame each other for the incident. Plaintiff sues defendants. A jury will decide who did what to whom, when, and why. Lay jurors contemplating an injured defendant who blames plaintiff for the incident, but does not claim for his injuries, may well question the credibility of defendant's account. Trial counsel are entitled to entertain a reasonable tactical concern about that possible reaction. Counsel need not be satisfied with the trial judge's usual injunction against jury speculation. Thus the bulkhead between "defense" and "offense" (in the form of a counterclaim) is far from water-tight. On the contrary, in these circumstances a counterclaim may fairly be regarded as integral to the defense.

Given these practical realities, a plaintiff seeking to disenfranchise the Corporation Counsel from representation of a city employee on a counterclaim should be able to point to an express statutory provision denying that authority, or to provisions which by their clear implication require such a result. Neither is present in this statutory scheme.

There are no provisions dealing specifically with counterclaims. But the broad authority and responsibilities laid upon the Corporation Counsel in the General Municipal Law, the New York City Charter, and the Administrative Code all point in the direction of the Corporation Counsel's authority to do what any competent attorney would be required to do in the case. On that point, the compulsory nature of the police officer's counterclaim is a significant factor, properly recognized as such by Judge Goettel in *Henry, supra*. Section 394(c) of the City Charter does indeed preserve Corporation Counsel's authority—

---

**1.** In the case at bar, plaintiff's counsel speaks slightingly of the nature of the officers' injuries. It is fair to say that defendants do not accept the full extent of plaintiff's claimed injuries. These contentions will be resolved at trial. They do not affect the present analysis. The procedural remedies available in respect of exaggerated claims are discussed *infra*, n. 9.

nay, his obligation—to direct "the proper conduct of the trial," or to exercise "the powers and privilege ordinarily exercised in the courts of litigation by attorneys-at-law when acting for private clients." A private attorney who failed to assert a compulsory counterclaim for an injured defendant in a case of tortious assault could reasonably expect to be sued for malpractice, brought up before the Grievance Committee, or both. I can think of no reason why Corporation Counsel should be under less demanding professional strictures. Certainly the police officer defendant's right to full scale representation is not diminished by section 50–k(9) of the General Municipal Law; on the contrary, that section secures to the defendant "any right to defense ... for any governmental officer or employee by, in accordance with, or by reason of, any other provision of state, federal or local law or common law." As noted *supra*, these defendants' counterclaims are compulsory under federal law, and are embraced in any practical construction of the term "defense." Lastly, the authority granted to the Corporation Counsel by section 395–1.0 of the Administrative Code to "appear" in such actions contains no implied restrictions on how he can conduct the litigation after appearing in it. I am not persuaded by plaintiff's argument to the contrary, based upon principles of statutory construction which arise from inapposite fact situations.

I appreciate that asserting a counterclaim on behalf of city employees may also redound to the tactical benefit of Corporation Counsel's other client, the city itself. The more serious issue arising from that fact is that of potential conflict of interest leading to disqualification, discussed *infra*. I do not see that it has anything to do with the question of statutory authority.

The Corporation Counsel's policy of asserting counterclaims on behalf of police officers in section 1983 claims apparently began on or about March 25, 1982. On that date, Corporation Counsel Frederick A.O. Schwarz, Jr. addressed a letter to then Police Commissioner Robert J. McGuire, advising McGuire "of a slight modification of our defense of civil rights and assault cases brought against police officers...." [2] Mr. Schwarz's letter continues:

"On occasion, a case is brought against an officer, and your and our investigations reveal that the officer was himself assaulted in the performance of his duties, by the plaintiff. Frequently, it is advantageous in the litigation to assert a counterclaim on behalf of the officer, both to highlight for the jury that the City is sinned against, and not the sinner, and to reduce, if not eliminate, any judgment for the plaintiff in those cases where there are mutual assaults.

"I have learned that in the past, we have generally not pleaded counterclaims in these situations as it was felt that representation of an officer on an affirmative claim might be prohibited as a gift of legal services. I have concluded that since the purpose of asserting a counterclaim is to enhance the City's defense, and reduce any net judgment, there is no such prohibition."

Counsel for the present plaintiff lays great emphasis upon Schwarz's prior, self-confessed concern that such representation "might be prohibited as a gift of legal services." Those qualms, whatever their source—Schwarz does not identify the basis of the feared prohibition—are certainly not dispositive of the issue before me. One may readily accept, without citation to specific statute, that the Corporation Counsel should not further or protect, at public expense, the entirely private legal interests of city employees. However, in section 1983 actions initiated by citizen plaintiffs, Schwarz overcame his qualms because "the purpose of asserting a counterclaim is to enhance the City's defense, and reduce any net judgment." I find that reasoning en-

tirely sufficient to justify the expenditure of public funds.

■ I conclude, therefore, that the Corporation Counsel has the requisite statutory authority—if not the professional duty—to assert counterclaims on behalf of police officers allegedly injured by plaintiffs who bring actions for injuries allegedly wrongfully inflicted by police officers.

(b) *Ethical Considerations With Respect to the Corporation Counsel's Representation of Police Officers on Counterclaims*

Alternatively, plaintiff argues that ethical considerations bar multiple representation by the Corporation Counsel because the City and the police officers have "very clearly defined diverse interests." Main brief at 23. Plaintiff asks that the Corporation Counsel be disqualified from representing the officers.

Diverse interests requiring disqualification can arise in civil rights actions against local governments and their employees. *Dunton v. County of Suffolk, supra*, furnishes an example, although not apposite to the case at bar. In *Dunton* the county attorney undertook the defense, in a section 1983 assault case, of both the county and one of its police officers; but then asserted at trial that the officer "acted as a husband, not even as an officer." 729 F.2d at 906. That denial by the county that the

officer was acting within the scope of his public employment—a useful defense to the county in these post-*Monell*[3]—was obviously prejudicial to the police officer. The Second Circuit, not surprisingly, held that the county attorney should have been disqualified from acting for the police officer.

■ The *Dunton* conflict does not arise at bar because the City does not deny—indeed, it proclaims—that Capodieci and Sherman were acting within the scope of their public employment and in the discharge of their duties. The Corporation Counsel made that evaluation, as it was required to do by section 50–k(2) of the General Municipal Law, when it undertook the officers' defense. There is no subsequent hint that the office has changed its view, or intends to.

■ In these circumstances, I cannot accept plaintiff's submission that differing interests exist between the City and the officers which require multiple representation. Multiple parties need not have identical interests to avoid ethical problems. Ethical problems arise only when differing interests adversely affect counsel's judgment or dilute his loyalty. The difference, in short, must be "discordant." These concepts are drawn from Canon 5 of the Code of Professional Responsibility, 29 McKin-

---

**3.** In *Dunton* the Second Circuit explained *Monell*'s insertion of potential conflict of interests into an area where municipalities had commonly provided counsel for their employees and themselves when both were sued. Under *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), a municipality was not a section 1983 "person" and had no liability. *Monell* changed all that:

"However, since the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities can be held liable under section 1983 for employees' actions taken pursuant to municipal policy. After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict. *See Van Ooteghem v. Gray*, 628 F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir.1981) (en banc) (per curiam), *cert.*

denied, 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would be be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)."
729 F.2d at 907.

ney's Consol.L. of N.Y. (West 1975) at EC5-14:

> "Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant."

In the case at bar, the City and the police officers make common cause against plaintiff on the merits issues of who provoked the incident, and on the damages issues of the nature and extent of injury.

The only potentially troublesome area is that of settlement negotiations. May Corporation Counsel properly cast away a police officer's counterclaim as a "bargaining chip" to obtain a favorable overall settlement?

It is clear enough from the motion papers that the officers authorize the Corporation Counsel to do just that. Both officers agreed in writing to personal representation by the Corporation Counsel in accordance with the terms of section 50-k of the General Municipal Law. In addition, each officer endorsed letters addressed to them by the Corporation Counsel in the following terms:

> "Dear Officer:
>
> "As you know, this office is representing you in the above-entitled action. Upon analysis of the case, we believe that it would be legally appropriate and beneficial, both to your defense and that of the City of New York, to interpose a counterclaim for money damages against the plaintiff.
>
> "As the City is providing your legal defense in this case, pursuant to the General Municipal Law, we request that you assign to the City any damages awarded to you on the counterclaim in this case up to an amount equal to the judgment and attorney's fees awarded to the plaintiff against you. If there is an award in

your favor in excess of any award, including attorney's fees, to the plaintiff, that excess amount will belong to you. And in the event that we are successful on your counterclaim, and the plaintiff is denied any recovery, the entire amount of the judgment will belong to you.

> "Please return a copy of this letter, with your signature acknowledging your acceptance of the above provisions, to the undersigned at your earliest convenience.
>
> Sincerely yours,
>
> s/ Elissa Hutner
> ELISSA HUTNER
> Assistant Corporation
> Counsel

EH/ea

> "I hereby assign my rights to any judgment awarded me in the above-captioned action in accordance with the terms set forth above.
>
> s/ _____

Finally, each officer has submitted an affidavit reciting in part:

> "7. I understood that I was agreeing to give the City any damages I recovered on the counterclaim up to an amount equal to a judgment against me if there were one. I also understood that at some point the Corporation Counsel might determine that it was in the best interest of the City and me personally to settle the case with plaintiff in order to avoid the threat of a potential judgment against me.
>
> "8. Therefore, I knowingly agreed to permit the Corporation Counsel to assert the counterclaim on my behalf and to withdraw it if it were deemed to be in my best interest and the City's to do so."

Contrary to the lengthy and not always lucid argument of plaintiff's counsel, there is no compelling reason in policy or caselaw which would prohibit the City from offering representation to police officers on these terms and conditions, or prohibiting police officers from accepting them.

Policy finds its expression in Canon 5 of the Code. The pertinent Disciplinary Rule

is DR 5–105, which provides in pertinent part:

"(A) A lawyer shall decline proferred employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." (footnotes omitted).

Several principles pertinent to the case at bar emerge from this Rule. The lawyer's obligation is to guard against any adverse effect upon his independent professional judgment in behalf of a client. There is no *per se* rule against multiple employment; it is disapproved only if the exercise of the lawyer's independent professional judgment in behalf of one client "will be or is likely to be adversely affected" by his representation of another. And even if the possibility or likelihood of an adverse effect arises, the clients, on the basis of full disclosure, may consent to the multiple representation.

In the case at bar, there is no question that if the case is tried, the Corporation Counsel can "adequately represent" the interest of both the City and the police officers. Indeed, as noted *supra*, no conflict whatsoever presents itself in the trial context. It is only in the context of settlement negotiations that the Corporation Counsel may accurately be seen as advising two clients with potentially divergent interests: in short, the "bargaining chip" syndrome.

Settlement negotiations in the instant case have come to nothing. As I understand the positions of the parties from the motion papers and oral argument, plaintiff insists upon a payment to him. Defendants will settle only on the basis of a mutual exchange of releases. From this settlement stalemate defendants argue that any ethical concern with multiple representation in settlement negotiations is academic, and need not be addressed.

In the alternative, defendants argue that the police officers consented to the multiple representation after full disclosure of its terms and conditions.

■ I cannot accept that the issue is academic. Even though settlement has not been realized, the Court has an interest in ensuring that at all stages of litigation, including trial, counsel are as a general rule available to advise each client as to the particular, individualized benefits or costs of a proposed settlement.

It cannot be gainsaid that the Corporation Counsel, by virtue of the terms and conditions of the multiple representation, holds the police officers' counterclaims in thrall, and may accordingly agree to their reduction or abandonment, if so advised, to obtain an overall settlement beneficial to the City. To that arrangement, the police officers have signified their assent after full disclosure.

That full disclosure takes the place of the letters addressed by the Corporation Counsel to the police officers. One of them I have quoted *supra;* the earlier letters to the officers specifically advised them of their right to retain private counsel at their own expense, although adding the *caveat:*

"If you retain private counsel and a judgment is entered against you, you will under no circumstances be indemnified by the City."

That advice is made necessary by section 50–k(4) of the General Municipal Law, whose provisions appear in the margin.[4]

Thus the Corporation Counsel, in dealing with police officers, is bound by the ground rules the legislature laid down. The police officer, acting within the scope of his public employment and in discharge of his duties, is entitled to be indemnified by the City in respect of his personal liability; but only if he requests the City to undertake his defense, and cooperates in the formation or presentation of his defense. In cases where the circumstances justify assertion of an affirmative counterclaim on behalf of the police officer, the Corporation Counsel will press the claim, but on two additional conditions: that the police officer assign to the City any award in his favor, to the extent necessary to offset plaintiff's recovery against the City.[5] Secondly, the police officer cedes to the Corporation Counsel the power to dispose of his counterclaim in settlement negotiations.

All these conditions are explained to police officers in the position of the present defendants. They may accept or reject them. The police officers' right to the retention of private counsel is made known.

■ I decline to hold that Canon 5 precludes the City from tendering, or police officers fully advised of their options from accepting, this form of multiple representation. No case cited by the plaintiff or uncovered by my own research condemns multiple representation in circumstances resembling those at bar. On the contrary: there is substantial authority for the proposition that Canon 5 potential conflicts of interest are adequately dealt with by the clients' informed consent, thereby precluding disqualification under Canon 5. See, e.g., *Doe v. A Corporation*, 709 F.2d 1043, 1050 (5th Cir.1983); *Westinghouse Electric Corporation v. Gulf Oil Corporation*, 588 F.2d 221, 229 (7th Cir.1978). The Second Circuit has reached the same conclusion in criminal cases. *In re Taylor*, 567 F.2d 1183, 1191 (2d Cir.1977).

■ Much of the present plaintiff's argument amounts, in essence, to a charge of apparent impropriety. But the Second Circuit has made it clear that, in evaluating motions to disqualify attorneys under the Canons, the appearance of impropriety is not enough; a disqualification motion will not lie "unless an attorney's conduct tends to 'taint the underlying trial,'" *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979), citing and quoting *W.T. Grant Co. v. Haines*, 531 F.2d 671, 678 (2d Cir.1976). In

---

**4.** The section provides:

"The duty to defend or indemnify and save harmless prescribed by this section *shall be conditioned upon (a) delivery to the corporation counsel* at the office of the law department of the city by the employee of the original or a copy of any summons, complaint, procvess, notice, demand or pleading within ten days after he is served with such document, and (b) the full cooperation of the employee in the defense of such action or proceeding and in defense of any action or proceeding against the city based upon the same act or omission, and in the prosecution of any appeal. *Such delivery shall be deemed a request by the employee that the city provide for his defense pursuant to this section.* In the event that the corporation counsel shall assume an employee's defense and thereafter the employee fails to or refuses to cooperate in the formation or presentation of his defense, the court shall permit the corporation counsel to withdraw his representation ten days after giving written notice to the employee of his intention to discontinue such representation."

**5.** Whether the officer makes a personal recovery depends on the resolution of the claims. Schwarz explained the arrangement in his March 25, 1982 letter to McGuire:

"In order to assert counterclaims in aid of our defense of the City and the officer, we will require officers to assign to the City that portion of any judgment recovered on their behalf in the case up to the amount of the plaintif's judgment, if any. For example, if the plaintiff recovers $5,000, and the officer recovers $10,000, half of the officer's judgment will be used to offset the plaintiff's recovery, and the other half will be kept by the officer. In the converse situation, if a plaintiff is awarded $10,000, and the officer $5,000, the officer would not have a recovery, but rather his award would go to reduce the City's liability."

Presumably if plaintiff's claim is rejected and the officer recovers on his counterclaim, the officer keeps it all.

(emphasis added).

the case at bar, no possibility of trial taint arises. The only concern is with the settlement process; but I do not find that the position assumed by the Corporation Counsel, with the police officers' informed consent, rises to the level of an impermissible taint on the proceedings.

I am also influenced by the fact that, in civil rights actions where the police officers have allegedly suffered injury at the plaintiff's hands, disqualification of the Corporation Counsel from representing the police officers (even in the face of the officers' consent) would deprive the police officers of a statutory right to indemnity, and bring about duplicative effort and expense on the part of counsel. These are considerations which I may legitimately place in the balancing of the ethical scales.

I conclude that ethical considerations do not foreclose the Corporation Counsel's representation of both the City and these particular counterclaiming defendants.[6]

There is, in short, no basis in law or policy to disqualify the Corporation Counsel from representing defendant officers on their counterclaims. *A fortiori* there is no basis to dismiss the counterclaims.

### III.

*Plaintiff's Motion to Amend the Complaint*

I will next discuss plaintiff's last-filed motion: to amend his complaint. As noted *supra*, that motion was filed on February 6, 1985, in a case marked trial ready on March 9, 1984 after completion of all discovery, and actually called for trial on December 17, 1984.

Plaintiff seeks to amend his complaint to assert two additional claims:

(1) A claim against the City under *Monell* which plaintiff's counsel articulates in his notice of motion (¶ 23) as follows:

"... [The City] utilized a policy of counterclaim for the purposes of promoting the City's interest by intimidating the Plaintiff into withdrawing a litigation because of the substantial risk that the Plaintiff was placed in by the nature and extent of the mutliple [sic] counterclaims brought by the City for the City although claiming to bring the same for the officer employees."

(2) A claim which, according to his "Statement of the Nature and Extent of Proposed Amendment" at ¶ 8:

"... addresses allegedly defective hiring and retention and training proceudres [sic] which lead to the employment and retention of individuals as police officers who pose a risk to the safety of citizens."

In aid of these new claims, plaintiff also seeks additional pre-trial discovery.

Defendants resist the amendments on the ground that the claims lack substance, and that the motion to amend is untimely.

#### (a) *Timeliness*

Both proposed amendments must be rejected as untimely. The timeliness of amendments to pleadings under Rule 15(a), F.R.Civ.P., was recently addressed by the Second Circuit in *Evans v. Syracuse City School District*, 704 F.2d 44 (2d Cir.1983), which condemned as an abuse of discretion the trial court's order permitting an amended answer. The Second Circuit in *Evans* observed that the rule's provision that leave to amend shall be freely granted "when justice so requires" is limited when there is "undue delay, bad faith or dilatory motive" on the part of the moving party, and "undue prejudice to the opposing party...." 704 F.2d at 46, citing and quoting

---

6. In a letter dated March 18, 1985, plaintiff's counsel calls my attention to a much publicized incident occurring on March 15. Defendant Sherman, now a police sergeant, was reportedly driving a police car involved in a hit-and-run accident which killed one pedestrian and injured another. Counsel argues in conclusory fashion that the incident "highlights the conflict which must now surely exist between the City and the defendant police officers" (apparently including Capodieci as well although he was not in the hit-and-run car). On the contrary, the incidents are entirely unrelated. The Corporation Counsel's professional ability to represent the City and Sherman in the case at bar is not in the least affected by the tragedy of March 15.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Delay is closely related to prejudice: the *Evans* court cited with approval *Advocat v. Nexus Industries, Inc.,* 497 F.Supp. 328, 331 (D.Del.1980), where the court stated: "[T]he longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Id.* at 46–47. The Second Circuit also quoted with approval this statement from *Nevels v. Ford Motor Co.,* 439 F.2d 251, 257 (5th Cir.1971):

> "[A]mendments should be tendered no later than the time of pretrial, unless compelling reasons why this could not have been done are presented.... [The court] must weigh good cause shown for the delay in moving, *vis a vis* dilatoriness of counsel resulting in last minute surprise and inability of opposing counsel to meet the tendered issue."

■ It is apparent that the requested amendments would involve substantial additional discovery, which plaintiff in fact demands. Plaintiff minimizes the scope of these additional discovery requests. The suggestion is unpersuasive. The additional discovery is substantial. Additional discovery or preparation required by the belated addition of new claims is a recognized source of prejudice justifying denial of a motion to amend. *Mende v. Dun & Bradstreet, Inc.,* 670 F.2d 129, 131 (9th Cir. 1982).

Plaintiff sought these amendments not at pretrial, but literally on the eve of trial. The fact that plaintiff obtained a postponement of trial by means of a meritless motion to disqualify defendants' counsel does not alter the analysis. Prejudice to defendants arises from the considerable additional discovery and trial preparation that would be required. In these circumstances, plaintiff bears a heavy burden of persuasion to explain and justify the delay.

That burden is not carried here. As for the claim challenging the City's counterclaim "policy," if (contrary to the Court's conclusion *supra* ) the Corporation Counsel lacked authority to represent the defendant officers, that defect was just as apparent when he asserted the counterclaims in September, 1982. Plaintiff's counsel says that at that time he was "concerned" by Corporation Counsel's assertion of the officers' counterclaims and regarded it as "an interesting tactic"; but that it was not until November, 1984, when the Corporation Counsel proposed settlement on the basis of dropping all claims, that he first:

> "... focused upon the reality of the counterclaim strategy about which I had always felt concern. The concern had become a focused reality and a focused operative tactic being used by the Defendant parties. My concerns, always felt, had been realized; and, within a short period of time thereafter, I brought to the Court the concern which I had for my client."
>
> Affidavit of James I. Meyerson, Esq., verified February 25, 1985, at ¶¶ 6, 17, 18.

This is an argument which one cannot take seriously from experienced trial counsel. The officers' counterclaims were as much a "reality," and the "operative tactic" as apparent, when they were first asserted as when, over two years later, the Corporation Counsel included them in an entirely predictable settlement ploy.

Plaintiff's counsel also argues that he had not become aware of the City's counterclaim "policy" until defendants filed affidavits opposing plaintiff's motion to dismiss the counterclaims or disqualify counsel. Point II, *supra.* There is no substance to this. The Corporation Counsel's "policy" of representing allegedly injured officers manifested itself to plaintiff's counsel when these counterclaims were filed, using "policy" in the sense of a reasoned tactical decision. One would not expect that Corporation Counsel asserted the counterclaims by inadvertence. All that the recent motion papers really say is that in March, 1982 Mr. Schwarz decided that it would be good trial tactics to assert counterclaims on behalf of allegedly assaulted police officers in civil rights cases, thus enhancing the "defense of the City and the

officer," letter of March 25, 1982 quoted at fn. 5, *supra*. These obvious practical considerations could hardly have come to plaintiff's counsel in November, 1984 with the force of unexpected revelation.

The proposed amendment attacking the counterclaim policy is untimely.

█ I reach the same conclusion with respect to the second proposed amendment. It is intended to add a new theory to plaintiff's general allegation of improper hiring and retention of police officers. The original complaint, at ¶¶ 32 and 33, keys these defects to a failure to screen out racially prejudiced officers. That theory is repeated in ¶ 32 of the amended complaint, which goes on, in ¶¶ 33 and 34, to allege in general and conclusory terms the hiring and retaining of officers "who pose a risk" to the City's citizens. An "example" of the City's defective policy is said to appear in the appointment and retention of defendant Sherman as a police officer, "notwithstanding that [he] was rejected for military service because of and apparently for psychiatric based reasons," ¶ 33.

This is an entirely new theory of liability, again asserted at the eve of trial. But the amendment seeking to assert this new theory of defective hiring procedure is untimely because it is common ground that plaintiff's counsel has known since 1983, as the result of discovery, of Sherman's military classification and the NYPD's testing procedures. Defendants' brief in opposition at 7.

(b) *Merits*

█ Where a proposed amended pleading fails to properly state a claim for relief, leave to amend will be denied. *Chapman v. Sheridan-Wyoming Co.*, 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393 (1950); *Marcraft Recreation Corp. v. Francis Devlin Co.*, 506 F.Supp. 1081, 1087 (S.D.N.Y.1981). In claims asserted under 42 U.S.C. § 1983, "[t]he first inquiry ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). *See also Suffolk County Patrolmen's Benevolent Association, Inc. v. County of Suffolk*, 751 F.2d 550, 551 (2d Cir.1985) (police officers' challenge to county's procedure for appointing independent counsel in civil rights actions not cognizable under section 1983 because the "procedure violates no ... federally protected right....").

These authorities furnish an alternative basis for denying plaintiff leave to amend his complaint to assert a claim arising out of the City's counterclaim policy. The claim is patently frivolous.

█ Stripped of rhetoric, the essence of plaintiff's claim is that, having elected to commence a section 1983 action against the City and police officers for having assaulted him, he has a federally protected right to be free of counterclaims asserting that he assaulted the officers. To state the claim reveals its lack of substance; no extended discussion is necessary.

Plaintiff submits an affidavit saying that he feels "intimidated" and "concerned" about the counterclaims and a possible judgment against him.[7] That is understandable enough; but as plaintiff then makes clear in his affidavit, he intends to go on with the litigation. In essence, plaintiff is saying that he does not like the counterclaims and would prefer that they be made to go away. Of course he would. But he has no federally protected right to make that happen. He must meet the counterclaims on their merits or lack of merits, just as the defendants must meet the claims asserted by plaintiff.

Plaintiff's counsel expresses his judgment that "the policy as utilized herein was and is being utilized to intimidate and retaliate against my client and to get my client to withdraw his cause of action." Counsel argues further that "such is improper, illegal and violative of my client's

7. Affidavit of Jonathan Smith, verified February 25, 1985, at ¶ 28.

rights...." [8] I have no doubt that the Corporation Counsel asserts the officers' counterclaims not only to protect the officers' legal interests, but also to improve all defendants' overall litigation position, including possible settlement. What I cannot accept is that the Constitution or the laws of the United States prevent the defendants from doing any of these things.

Plaintiff's counsel cited no authorities in support of his new constitutional claim in the 10-page brief in support of the motion to amend the complaint. Those authorities were reserved for the 47-page "reply" brief. There we find compendious citations for familiar principles, none of which is particularly applicable to the case at bar.

Thus plaintiff argues that the City's counterclaim policy denies plaintiff access to the courts; that the assertion of the counterclaims constitutes an abuse of process akin to malicious prosecution, and cognizable under section 1983; that the counterclaims should be viewed as a continuation of the excessive police force initially exercised against plaintiff, and part of a continuing coverup of that excessive force; and that by asserting counterclaims against plaintiff, the City deprives plaintiff of the equal protection of the laws. I find no substance in any of these claims.

 The best proof that plaintiff has not been denied access to the courts lies in the vigorous litigation he is conducting. I decline to equate a compulsory counterclaim with malicious prosecution. Facts permitting an inference that the counterclaims were asserted in bad faith, for the purpose of harassment or coverup, may be adduced at trial; but such conduct is compensable within the framework of the present complaint, and gives rise to no federal cause of action requiring amendment of the pleading.

As for equal protection, plaintiff's argument is that the counterclaim policy "is limited solely to litigations instituted against the City and police officers and not to any other public employee who might allegedly suffer injury from a citizen and be sued by the citizen/him/herself for the violation of constitutional rights." Reply brief at 40. Thus, the argument continues, "a citizen might sue a sanitation worker for brutality," but "the City's policy of counterclaim would not apply." *Ibid.* This is said to violate plaintiff's right as a litigant to equal protection of the laws, since there is allegedly no rational basis for the distinction. The only case cited by plaintiff on the equal protection claim is *LeClair v. Saunders,* 627 F.2d 606 (2d Cir.1980).

The present record does not demonstrate that the Corporation Counsel follows a practice of asserting counterclaims in citizen assault cases only on behalf of its police officer employees. But assuming *arguendo* that this is the practice, no viable equal protection claim arises. That is because there is a rational basis for devoting the limited resources of the Corporation Counsel's office to the assertion of counterclaims in section 1983 suits against police officers. Alone among City employees, law enforcement officers are upon occasion required by the scope of their public employment and the discharge of their official duties to forcibly restrain citizens. A sanitation worker, to pursue plaintiff's example, who brutalizes a citizen is by definition acting outside the scope of his public employment; the sanitation worker's function is to lay hands on refuse, not on citizens. It is therefore not in the least surprising (if it is the fact) that the Corporation Counsel's litigation policy of asserting counterclaims on behalf of assaulted police officers finds no counterpart among the ranks of other municipal employees. No constitutional claim · emerges from these practical realities. *LeClair v. Saunders, supra,* is entirely inapposite. It involved a claim by dairy farm owners of selective enforcement of a Massachusetts regulation governing dairy farms. The Second Circuit summarized the elements of such a claim:

"... liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others

**8.** Meyerson affidavit, *supra,* at ¶ 21.

similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

627 F.2d at 609–10 (footnote omitted). Neither element is even arguably present in the case at bar. Assuming the accuracy of plaintiff's factual premise, the City applies its counterclaim policy in all section 1983 actions against police officers where the police officers allege that they were assaulted and seriously injured; and, as noted, there is a rational basis for such a policy.

■ Quite apart from the fact that the proposed amendment is untimely, I deny plaintiff leave to amend his complaint to state a *Monell* claim arising out of the City's counterclaim policy because the claim is entirely lacking in merit.[9]

■ Although defendants ask me to do so, I decline to base a denial to permit the second proposed amendment upon a facial insufficiency of pleading. Defendants argue that the complaint must allege *in haec verba* that the City's hiring and retention

policies constituted "gross negligence" or "deliberate indifference" to plaintiff's constitutional rights. That is undoubtedly what plaintiff must *prove* at trial, *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.1979); but in my view the proposed amended complaint sufficiently pleads the three elements of a section 1983 claim. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). However, the amendment is denied on the ground of untimeliness.

Plaintiff's motion to amend his complaint is denied.

## IV.

*Plaintiff's Demands for Additional Discovery*

Plaintiff makes several demands for additional pretrial discovery.

Plaintiff's requests for additional discovery "related to the multiple party representation by the Corporation Counsel" are denied. Quite apart from the fact that discovery in the case closed long ago, that multiple representation is impervious to challenge as a matter of law. Accordingly discovery could not lead to admissible trial evidence.

In a separate motion, plaintiff demands:

---

**9.** This does not leave plaintiff without remedy, if it should later appear that the counterclaims were pleaded and pressed by the Corporation Counsel in bad faith. The 1983 amendment to Rule 11, F.R.Civ.P., requires that pleadings be signed by counsel. The rule goes on to provide:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

If a pleading is signed in violation of the rule, the Court:

"... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

Indeed, counsel signing pleadings are now required to do more than simply eschew bad faith. The Notes of the Advisory Committee say this of the 1983 amendment to Rule 11:

"The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975 (E.D.Pa.1973). This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. See *Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir.1980)."

Under revised Rule 11, if Corporation Counsel pleads, asserts in settlement negotiations, and sends to trial a $1,000,000 counterclaim for what turns out to be a hangnail, his office may expect to be penalized by sanctions, in all likelihood increasing in severity if a pattern of like conduct in other cases is demonstrated to the trial judge. It is clear that sanctions may be imposed for a Rule 11 violation in circumstances which might not justify an award of attorney's fees to plaintiff under 42 U.S.C. § 1988.

(1) Access to defendant Sherman's military records, "by and through an executed authorization from him," in order that "documents related to his rejection for military service, for psychiatric reasons, can be further analyzed and explored" by plaintiff's expert witness, Dr. Seymour. Plaintiff's brief at 3.

(2) Answers to interrogatories, and production of documents, by the City on the general subjects of the City's awareness of Sherman's rejection by the military for psychiatric reasons, and its policies with respect to the hiring as police officers of individuals rejected by the military.

(3) All psychological examinations administered by the NYPD to Capodieci and Sherman.

(4) Pre-trial depositions of two witnesses, Julio Alvarez and Jose Cortez.

It is apparent that item (2) relates solely to the new theory of City liability sought to be asserted in the amended complaint. Since leave to amend to assert that claim has been denied, the discovery requests fall with it, and are also denied.

Defendants resist production of the psychological examinations of the defendant officers because in prior discovery proceedings plaintiff's counsel withdrew his demand for them. Plaintiff's counsel acknowledges that is so because, at that time, "I did not have a consulting expert with whom to consult." [10] He now says he located Dr. Seymour in "approximately November, 1984," plaintiff's brief at 2, although apparently the year-end motion papers represent defendants' first awareness of him.

 The fact that counsel did not find an expert until just before trial does not excuse a failure to plead in timely fashion defective policies in respect of hiring military psychological rejects. Therefore Dr. Seymour's recent arrival on the scene cannot revive that claim, nor its accompanying discovery demands. However, I am not aware of any formal discovery demands by defendants requiring plaintiff to identify his witnesses or suffer preclusion; and I accept counsel's statement that a qualified psychologist willing to testify against the NYPD can prove difficult to locate locally. Therefore I will not preclude Dr. Seymour from testifying.

 The question therefore arises whether plaintiff is entitled to additional discovery of psychological data in respect of the individual defendants, in order to permit a more informed opinion from the expert witness. To be sure, the discovery deadline has passed; but the litigation process is a search for truth, as well as an exercise in rule enforcement. I have enforced the rules against this plaintiff where the delay was inexcusable and the resulting prejudice to defendants apparent. But I have discretion to enlarge the discovery deadline to permit further development of information pertinent to issues fairly and timely pleaded.

Those issues are (1) whether the police officers wrongfully assaulted plaintiff, or plaintiff wrongfully assaulted them; and (2) whether the City was guilty of gross negligence in failing to screen out racially prejudiced officers. The first issue lies at the heart of the claims and counterclaims asserted by the individual parties. The second lies at the heart of plaintiff's *Monell* claim against the City. If an expert witness is able to formulate an opinion on these issues, it would be probative and relevant.

It would appear that psychological test results and other data covering the police officer defendants, generated both by the military and the police, are "reasonably calculated to lead to the discovery of admissible evidence on these issues," that being the test of relevance under Rule 26(b)(1), F.R.Civ.P.

But defendants argue that their psychological tests are privileged and not subject to disclosure, citing *Elliott v. Webb*, 98 F.R.D. 293 (D.Idaho 1983). *Elliott* did not undertake to lay down a blanket rule of

---

**10.** Affidavit of James I. Meyerson, verified February 4, 1985 at ¶ 13.

privilege; after balancing factors it considered relevant, the trial court refused to compel disclosure of police officers' psychological evaluations in a section 1983 case because they were "of a policy or self-evaluative nature." 98 F.R.D. at 297. It does not appear that the individual officers in *Elliott v. Webb* sought an affirmative recovery by counterclaim. Courts in this circuit have, in other circumstances, tipped the balance in favor of compelled disclosure of psychiatric evaluations. *Lora v. Board of Education of City of New York,* 74 F.R.D. 565 (E.D.N.Y.1977); *cf. In re Doe,* 711 F.2d 1187 (2d Cir.1983).

██ I hold that when police officers assert counterclaims in cases of this nature, they voluntarily place their personalities and possible propensities to violence at issue. In these circumstances, the social goal of truth ascertainment outweighs any need to preserve confidentiality.[11]

I therefore direct the disclosure to plaintiff's counsel of the City's psychological test results and evaluations of defendants Sherman and Capodieci. I also direct Sherman to execute the necessary authorization permitting disclosure of his military testing.

This production will take place pursuant to a protective order limiting viewing of the documents to plaintiff's expert witness and plaintiff's counsel—not to plaintiff. The parties are directed to agree on the terms of the protective order, or submit the dispute for resolution by the Court.

The parties are directed to expedite these matters. As soon as plaintiff's expert witness is fully advised, I will grant reciprocal additional discovery and permit defendants discovery of plaintiff's expert pursuant to Rule 26(b)(4), F.R.Civ.P.

Since it is clear that plaintiff had ample opportunity to take timely pre-trial depositions of Alvarez and Cortez, I will not compel them now. Plaintiff may, if so advised, subpoena them at trial.

## CONCLUSION

Plaintiff's motion to dismiss the counterclaims, or to disqualify counsel, is denied.

Plaintiff's motion to amend the complaint is denied.

Plaintiff's motions for additional discovery are denied in part and granted in part.[12]

It is SO ORDERED.

---

**11.** In *In re Doe, supra,* involving a grand jury subpoena, the Second Circuit dealt generally with an asserted patient-psychotherapist privilege. Judge Cardamone's opinion looked to Wigmore for the criteria of a privileged, confidential communication:

"To begin, Professor Wigmore has set forth four conditions necessary to the establishment of a privilege against the disclosure of communications. They are: (1) the communication must be one made in the belief that it will not be disclosed; (2) confidentiality must be essential to the maintenance of the relationship between the parties; (3) the relationship should be one that society considers worthy of being fostered; and (4) the injury to the relationship incurred by disclosure must be greater than the benefit gained in the correct disposal of litigation. 8 J. Wigmore, *Evidence* § 2285, at 527 (McNaughton rev. 1961). Arguably these conditions could obtain in a true psychotherapist-patient relationship." 711 F.2d at 1193.

The conditions would appear equally applicable to a psychologist-subject relationship. The court in *Doe,* while acknowledging the existence of the privilege, declined to apply it because the circumstances did not square with the four conditions of confidentiality. Nor, in my view, does a psychological test administered as a compulsory part of evaluation for military service, or for placement or retention in a police department. To the extent that *Elliott v. Webb, supra,* constitutes contrary authority, I decline to follow it.

**12.** In the wake of the March 15, 1985 traffic accident involving Sherman, see fn. 6 *supra,* plaintiff's counsel has demanded additional discovery in a letter to the Court dated March 22, 1985. That additional discovery is denied. The additional discovery authorized by this opinion is the only additional discovery that will take place in this case.